FILED
2005 Oct-07 PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID HARDY,                       }
                                   }
    Plaintiff,                     }
                                   }          CIVIL ACTION NO.
v.                                 }          04-AR-3143-S
                                   }
UNIVERSITY OF ALABAMA HEALTH       }
SERVICES FOUNDATION, P.C., et      }
al.,                               }
                                   }
    Defendants.                    }

## MEMORANDUM OPINION

The court has before it motions for summary judgment filed by two sets of defendants, both filed on September 1, 2005. The complaint of plaintiff, David Hardy ("Hardy"), contains four counts. In Count One, Hardy implicitly and inartfully invokes 42 U.S.C. § 1983, claiming that he was deprived of his Fourteenth Amendment rights by defendants, Kathy Goolsby ("Goolsby"), Mary Ann Ortagus ("Ortagus"), and the University of Alabama at Birmingham Health System ("UAB Health System") while acting under state law.[1] The court assumes that Hardy is complaining in this count of a denial of procedural due process. He does not attempt to allege facts upon which a non-employer owes any duty to provide "due process." In Count Two, Hardy, again, inartfully,

---

[1] The complaint earlier asserted this claim, and every claim, against the Board of Trustees of the University of Alabama. This defendant was incorrectly named in the complaint as the University of Alabama at Birmingham, but the court granted a motion to substitute the proper party on November 19, 2004. Thereafter, the court granted the Board's motion to dismiss the action against it with prejudice on December 10, 2004.

asserts both a constitutional and a state law claim for invasion of privacy, this time against all defendants: namely, Goolsby, Ortagus, UAB Health System, Jerrell Moore ("Moore"), and University of Alabama Health Services Foundation, P.C. ("UAHSF"). In Count Three, Hardy claims that in violation of the United States Constitution, all defendants converted plaintiff's personal property. Which constitutional provision was allegedly violated is absent from the count. In Count Four, Hardy attempts to assert a common-law claim for conversion of personal property. Both the motion for summary judgment filed by Ortagus and UAHSF, and the motion filed by Goolsby, Moore, and the UAB Health System are due to be granted for the reasons hereinafter discussed.

## Summary Judgment Facts[2]

UAHSF owns, operates, and staffs a medical facility called the Hoover Clinic. It rents space there to the University of Alabama at Birmingham ("UAB"), which a division of the Board of Trustees of the University of Alabama, and which runs a laboratory in the rented space. In August 2000, Hardy began working for UAB as a medical lab technician at the Hoover Clinic

---

[2] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

location. In that position, Hardy reported to Tani Self ("Self"), UAB's Outreach Clinic Supervisor, who in turn reported to Goolsby, the Administrative Director for Outpatient and Outresearch Laboratories. During Hardy's employment, Ortagus was employed by UAHSF as the Business Manager for the Hoover Clinic, but she did not supervise the UAB laboratory employees or make employment decisions related to the laboratory employees, all of whom were the employees of UAB and not of UAHSF.

Hardy's hire letter states that he is an "at will" employee of UAB. The "UAB and You" personnel handbook was in effect throughout Hardy's employment with UAB, and Hardy signed a document upon his hiring indicating that he had received a copy of the handbook and had been informed of UAB's employment policies. That handbook states that "UAB reserves the right to determine the duration of employment of any individual and hence to discharge an employee with or without cause," and that "an employee who receives three written warnings during an 18-month period . . . may be terminated without proceeding through the remaining steps in the disciplinary process."

As a medical lab technician, Hardy's primary job responsibilities were drawing blood and performing blood tests. Moore came to work for UAB in the rented space at the Hoover Clinic in early 2004 as a phlebotomist. Moore was able to draw blood but was not authorized to run blood tests.

When Hardy wanted to take a vacation, he was required to get prior approval from Self. To do so, he filled out a two-part vacation request form and sent it to Self, who kept one portion and returned the other. Hardy kept these returned request forms in a binder, which he stored in an unlocked supply cabinet accessible to all employees at the Hoover Clinic. Hardy often left these forms on the countertop in the lab before filing them in the binder, and Moore had seen Hardy's forms on many prior occasions. Hardy also knew that his co-workers had looked in his binder prior to September 22, 2004. Hardy filed a vacation form with Self on September 15, 2004, requesting to miss work on September 20-22, 2004. Self denied that request and returned the form to Hardy, who placed it in his binder.

Although Self had denied Hardy's request in writing, Hardy, as the result of a phone conversation with Self, was confused about whether he was required to work on September 22, 2004, and did not report to work on that day. Without Hardy, the Hoover Clinic could not run blood tests, so Ortagus contacted Self to determine whether Hardy was authorized to be absent on that day. Self informed Ortagus that she had not given Hardy permission to miss work. When Moore arrived later that morning, Ortagus asked Moore if he knew whether Hardy would be working that day. Moore thereupon looked in Hardy's binder in the supply cabinet and found the denied request form for September 22, 2004. Moore

showed this form to Ortagus and then returned it to Hardy's binder and returned the binder to the cabinet. Neither Moore nor Ortagus took any further action related to Hardy's absence.

Upon Hardy's return to work on September 27, 2004, he received a written warning for his unapproved absence, the second such warning in less than a year. Although Hardy disputes the validity of these earlier warnings, he did not file a complaint about them with the Office of Human Resource Management Relations, as the "UAB and You" handbook required. When he placed the new warning in his binder, Hardy realized that someone had accessed the binder while he was away. He asked the office workers in the clinic, and they told him that Moore looked into the binder while Hardy was absent. Hardy confronted Moore later that morning, and a heated discussion ensued.

During an investigation of the September 27, 2004, confrontation, Goolsby placed Hardy on administrative leave effective October 8, 2004. The investigation was completed on October 14, 2004, culminating in Hardy's third written warning in 18 months and his termination from employment with UAB.

## **Analysis**

**I.    42 U.S.C. § 1983**

For a claim of a "due process" violation to be viable under

§ 1983,[3] a plaintiff must have had a protected property interest. In this case, Hardy's entitlement to "due process" presupposes a protectable property interest in his continued employment with UAB, and control over the process by which that interest could be protected. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Wherever derived, the existence of a property right turns on whether Hardy has a "legitimate claim of entitlement" to his continued employment. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). Therefore, the court must look (1) to Alabama law, and (2) to the agreement between Hardy and UAB to define the contours of any entitlement Hardy had to his continued employment with UAB.

It is black-letter law in Alabama that "an employee contract at will may be terminated by either party with or without cause or justification." *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987) (citing *Meeks v. Opp Cotton Mills, Inc.*, 459

---

[3] Defendants argue, rightly, that Hardy has failed to specifically plead the requirements of § 1983, alleging only a deprivation of his Fourteenth Amendment rights. While it is clear that there is no direct cause of action for such a deprivation, the requirements of modern notice pleading are liberal. The parties are on sufficient notice of the nature of Hardy's claims, as both summary judgment briefs articulated Hardy's constitutional claim as one brought under § 1983.
Additionally, the court should make it known that defendants Goolsby, Moore, and the UAB Health System raise the shields of sovereign immunity, qualified immunity, and state-agent immunity. Because each of Hardy's claims fails on its merits, the court need not address the immunity issues at this time.

So. 2d 814 (Ala. 1984); *Hinrichs v. Tranquilaire Hospital*, 352 So. 2d 1130 (Ala. 1977)). Therefore, "a state employee who may be discharged at will under state law does not have a property interest in his continued employment, and is not entitled to the protections of due process." *Blanton v. Griel Memorial Psychiatric Hosp.*, 758 F.2d 1540, 1543 (11th Cir. 1985) (citing *Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir. 1980)). The only evidence in the record bearing on Hardy's status shows clearly that he was an employee at will. Hardy's hire letter states explicitly that Hardy was hired in an employment at will capacity. Hardy thus could not have derived any entitlement to continued employment from Alabama law. If there is no property interest, there is no "due process" owed, and if "due process" is owed, it is by the employer and not a third party who lacks authority to provide it.

The summary judgment record is devoid of any evidence that an entitlement could be implied from Hardy's employment contract or prior dealings with UAB. According to the "UAB and You" employee handbook, which was in effect throughout Hardy's employment, UAB retains the right to fire any employee, at any time, with or without cause. Furthermore, that handbook states that an employee can be fired summarily if he receives three written warnings within 18 months. Although Hardy's complaint claims that UAB's operating procedures created an expectation of

7

continued employment, there is no evidence in the record supporting that claim. Such a conclusory statement will not defeat summary judgment. Absent any evidence to the contrary, Hardy simply had no property right in his continued employment, vitiating Hardy's Fourteenth Amendment claim without having to explore the issue of any control over the process.[4]

## II. Invasion of Privacy

To prove his claim for invasion of privacy, Hardy must put himself under more than the privacy "penumbrella." He must produce evidence of one of the four types of invasions recognized by Alabama courts. He seeks to show that a wrongful intrusion occurred, i.e., that defendants intruded into his "physical solitude or seclusion." *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997) (citing *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321 (Ala. 1961)). In Count Two, Hardy appears to assert both a federal constitutional invasion of privacy[5] and a common-law claim. Not only because Hardy includes both claims in the same count, but also because both claims rise and fall on the same body of law, the court need not distinguish between the two claims for the present analysis.

---

[4] Various defendants advance other arguments for summary judgment (no state action, no control over employment decisions, adequate process provided prior to Hardy's termination), but the resolution of these questions is ultimately academic.

[5] While it is likely that defendants could successfully defend this claim by proving that they did not act under color of state law, the court need not resolve this issue. No constitutional right to privacy exists in information that is not private.

It is axiomatic that there can be no invasion of privacy when the information or information uncovered is not private. *See, e.g., Busby v. Truswal Systems Corp.*, 551 So. 2d 322, 323 (Ala. 1989). Therefore, an action for wrongful intrusion can never be based "upon the defendant's receipt of information already known to others." *Johnson v. Stewart*, 854 So. 2d 544, 549-50 (Ala. 2002). The Restatement (Second) of Torts § 652B, adopted by the Alabama Supreme Court in *Phillips v. Smalley Maint. Servs., Inc.*, 435 So. 2d 705, 709 (Ala. 1983), recognizes physical intrusions as well as those from "investigation or intrusion into . . . private concerns." § 652B, cmt.b. There is, however, one important caveat: "the interference with the plaintiff's seclusion [must be] a substantial one, of a kind that would be highly offensive to the ordinary reasonable man." § 652B, cmt.d.

Hardy alleges that his privacy was invaded because Moore opened his notebook, looked at his vacation request forms, and showed one of those forms to Ortagus. Although he brings this claim against all defendants, Hardy makes no claim that Goolsby participated in the alleged invasion of privacy in any way. For this reason alone, Goolsby is due summary judgment.

The information Moore discovered was not private, so no wrongful intrusion occurred. Not only did Moore see Hardy's denied request forms, but the forms had been sent to Self and

then returned to Hardy as per normal operating procedures. Thus, the information Moore found in Hardy's binder was already known to Self and had been previously been communicated to Ortagus.[6] The disclosure of such public information is not an invasion of privacy under *Johnson* and other precedent. Hardy conspicuously does not sue everybody who ever accessed his personnel file.

Hardy also did not maintain his binder as if the information it contained was private. He placed it in an unlocked supply cabinet which was accessible to every employee at the Hoover Clinic, and continued to store it in that cabinet after knowing that other employees had looked into the binder. Hardy often left the forms on the countertop, in plain view, before filing them in his binder. Under these circumstances, especially when he did not file suit on the prior occasions when employees looked into his binder, and continued to allow his forms to be displayed for public view on the countertop, it is a bit disingenuous for Hardy to contend that his privacy has suddenly been invaded. Summary judgment is due to be granted in favor of all defendants on this ground.

Even if the materials in question were deemed "private," Alabama courts recognize a limited privilege to engage in reasonable investigations regarding employment matters. *See*

---

[6] Hardy's reliance on *Vernars v. Young*, 539 F.2d 966 (3d Cir. 1976), is misguided. *Vernars* was decided under Pennsylvania law and is limited to a specific factual application (opening sealed personal mail). The court finds no persuasive justification for relying on that holding in the instant case.

*Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778, 781 (Ala. 1994). Where an employer acts in good faith and without malice in reasonably investigating an employment issue, any intrusion into privacy will not be actionable. *See Crutcher v. Wendy's of No. Ala., Inc.*, 857 So. 2d 82, 96 (Ala. 2003). Furthermore, this doctrine has been extended to non-employers if (1) there is a legitimate purpose for the investigation, and (2) the means used are not "offensive or objectionable." *Johnson v. Corporate Special Servs., Inc.*, 602 So. 2d 385, 388 (Ala. 1992); *see also I.C.U. Investigations, Inc. v. Jones*, 780 So. 2d 685, 689 (Ala. 2000).

All defendants in this case had a legitimate reason for the investigation and did not use objectionable means to accomplish that objective. Defendants clearly were affected by Hardy's absence from work. The Hoover Clinic could not adequately service its patients unless it could perform blood tests, and Hardy was the only UAB employee who performed those tests. Moore merely helped Ortagus to determine whether the medical lab technician scheduled to be at the Clinic would be working on that day. Defendants were not Hardy's employer, but their business interests were intertwined with that of the employer, and they had every right to protect those interests. Furthermore, the means used to investigate Hardy's absence, merely looking into his binder, cannot be characterized as offensive. Therefore, even

assuming the information in Hardy's binder was private, it was disclosed pursuant to a good faith protection of defendants' business interests, and was not a wrongful intrusion into Hardy's privacy.

### III. Conversion

"Conversion consists of (1) an act or omission by the defendant (2) with the intent to assert control over property (3) that belongs to the plaintiff (4) resulting in substantial interference to the plaintiff's possessory rights." *Martin v. Luckie & Forney, Inc.*, 549 So. 2d 18, 19 (Ala. 1989). It is well-settled Alabama law that such interference "consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff." *Conner v. Allen*, 33 Ala. 515, 515 (1859). Hardy asserts both a constitutional conversion claim and a common-law conversion claim.[7] For the reasons stated below, both theories are so lacking in merit as to be subject to a dispositive ruling in favor of defendants.

---

[7] He again asserts these claims against all remaining defendants. However, as with the invasion of privacy claim, there are no facts in the summary judgment record indicating that Goolsby had any involvement with the conduct allegedly constituting a conversion. Summary judgment is due to be granted to Goolsby on Counts Three and Four on this basis.

due to be dismissed.

While it may be unclear whether the denied vacation request form was Hardy's personal property, assuming *arguendo* that it was, there is no evidence in the record to support the conclusion that defendants interfered with Hardy's possessory rights in that property. Hardy's entire allegation is based on Moore's looking into his binder and then returning it to the cabinet. When Hardy returned to work, the binder was exactly where he had left it, and contained the exact same materials it had contained previously. Thus, Hardy cannot assert that his right to possess the binder was adversely impacted by Moore's action. In order to constitute an actionable conversion, a plaintiff must have been divorced from his property in some meaningful or harmful way. Hardy cannot sue for conversion when defendants did not interfere with his property interest in the personal property at issue. Summary judgment will be granted on Counts Three and Four.

## Conclusion

In accordance with the foregoing, all defendants' motions for summary judgment will be granted by separate order.

DONE this 7th day of October, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE